IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-03125-PAB-KMT

LORRAINE ALARID,

    Plaintiff,

v.

MACLEAN POWER, LLC d/b/a Foresight Products, a Delaware corporation,
EDWINA HURTADO, individually, and
JOSE ALVARADO, individually,

    Defendants.

---

# ORDER

---

This matter is before the Court on the Partial Motion to Dismiss [Docket No. 20] filed by defendant MacLean Power, LLC d/b/a Foresight Products.[1] Defendant seeks to dismiss plaintiff's state law claims for negligent supervision and negligent retention.

## I. BACKGROUND[2]

Plaintiff Lorraine Alarid began working for defendant in 1998 as an assembly and packaging worker. Docket No. 6 at 3, ¶ 10. In 2009, defendant hired Jose Alvarado. *Id.* at 3, ¶ 11. In 2010 and 2011, plaintiff and Mr. Alvarado casually dated. *Id.* at 3, ¶ 12. Plaintiff ended the relationship in March 2011. *Id.* Mr. Alvarado thereafter threatened to inform defendant about their relationship. *Id.* at 3, ¶ 13. Plaintiff instead

---

[1] All references to "defendant" are to MacLean Power, LLC d/b/a Foresight Products unless otherwise indicated.

[2] The following facts are taken from plaintiff's amended complaint and are presumed true for purposes of resolving the present motion.

informed defendant of the relationship, including Mr. Alvarado's threats towards her, but defendant did not address his behavior.  *Id.*  Mr. Alvarado subsequently began sexually harassing plaintiff at work.  *Id.* at 3, ¶ 15.  Plaintiff reported these incidents to defendant, but Mr. Alvarado's harassment continued for two years.  *Id.* at 3, ¶ 16.  In 2012, defendant required plaintiff and Mr. Alvarado to sign a statement stating that they would have no contact with one another while at work.  *Id.* at 4, ¶ 18.  Mr. Alvarardo's harassment continued, however, when he sent plaintiff an explicit photograph.  *Id.* at 4, ¶ 19.  Plaintiff reported the incident, but defendant did not correct Mr. Alvarado's behavior.  *Id.* at 4, ¶ 20.  On May 22, 2013, Mr. Alvarado approached plaintiff over 20 times, asking her to give him another chance and, in July 2013, he informed plaintiff that he had a gun and threatened her with bodily harm.  *Id.* at 4, ¶¶ 21-22.  Plaintiff alleges that Mr. Alvarado got into verbal confrontations with other employees and that defendant was aware of these incidents.  *Id.* at 4, ¶ 23.

In July 2013, plaintiff sought and received a temporary restraining order ("TRO") against Mr. Alvarado in County Court for Adams County, Colorado.  *Id.* at 5, ¶ 24.  At the TRO hearing, plaintiff called co-worker Edwina Hurtado to testify, but, according to plaintiff, Ms. Hurtado lied under oath to protect Mr. Alvarado.  *Id.* at 5, ¶ 26.  Defendant terminated Mr. Alvarado's employment shortly after the TRO was issued.  *Id.* at 5, ¶ 25.

Plaintiff alleges that, after the TRO hearing, Ms. Hurtado began to harass plaintiff by making rude comments and throwing plaintiff's work on the floor.  *Id.* at 5, ¶ 27. Plaintiff reported Ms. Hurtado's behavior to defendant, but defendant did not address the issue.  *Id.* at 5, ¶ 28.  Ms. Hurtado began to exhibit aggressive behavior toward

other employees, who noticed this behavior and informed defendant. *Id.* at 6, ¶ 36. On October 1, 2013, Ms. Hurtado and co-worker Virginia Deleon got into an argument, wherein Ms. Hurtado threatened to fight Ms. Deleon. *Id.* at 5, ¶ 30. Later that day, plaintiff was standing in the break room with Ms. Deleon when Ms. Hurtado began yelling. *Id.* at 5, ¶ 29. Plaintiff responded and Ms. Hurtado punched her in the face and pulled her hair. *Id.* at 6, ¶ 31. Co-workers were able to separate the two women, but plaintiff suffered a bloody nose and bruising, and had pieces of her hair ripped out. *Id.* at 6, ¶¶ 32-33. Police responded and issued Ms. Hurtado a summons and complaint for assault. *Id.* at 6, ¶¶ 34-35. Defendant terminated Ms. Hurtado's employment. *Id.* at 6, ¶ 35. Defendant terminated plaintiff two days later, claiming that plaintiff violated the company's workplace violence policy. *Id.* at 6, ¶ 37.

On October 1, 2014, plaintiff filed this case in the District Court for Adams County, Colorado against defendant, Mr. Alvarado, and Ms. Hurtado. Docket No. 1-1. On November 19, 2014, plaintiff removed the case to this Court. Docket No. 1. Plaintiff's amended complaint asserts state law claims against defendant for negligent supervision and negligent retention and federal law claims for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1942. Docket No. 6 at 8-10. Plaintiff asserts state law claims for intentional infliction of emotional distress and invasion of privacy against Mr. Alvarado and a claim for battery against Ms. Hurtado. *Id.* at 6-7. On December 8, 2014, defendant filed the present motion, seeking the dismissal of plaintiff's negligent supervision and negligent retention claims. Docket No. 20.

## II. STANDARD OF REVIEW

Defendant's motion implicates both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over certain claims. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). To the extent the defendant attacks the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata Cnty.*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *Id*. Ultimately, and in either case, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because it is "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted is not to weigh potential evidence that the parties might

present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim. FED. R. CIV. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted). At the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

### III. ANALYSIS

### A.  Negligent Supervision Claim Based Upon Mr. Alvarado's Conduct

*1. Preemption*

Defendant argues that the portion of plaintiff's negligent supervision claim arising from Mr. Alvarado's conduct is preempted by the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 24-34-301, *et seq.*  Docket No. 20 at 4.  The Colorado Supreme Court has held that, in determining whether a Colorado statutory right of action supplants a common law right, "'statues in derogation of the common law must be strictly construed, so that if the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication.'"  *Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66, 68 (Colo. 1995) (quoting *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1076 (Colo. 1992)).  CADA provides that it shall constitute discrimination

> [f]or an employer to refuse to hire, to discharge, to promote or demote, to harass during the course of employment, or to discriminate in matters of compensation, terms, conditions, or privileges of employment against any person otherwise qualified because of disability, race, creed, color, sex, sexual orientation, religion, age, national origin, or ancestry; but, with regard to a disability, it is not a discriminatory or an unfair employment practice for an employer to act as provided in this paragraph (a) if there is no reasonable accommodation that the employer can make with regard to the disability, the disability actually disqualifies the person from the job, and the disability has a significant impact on the job.  For purposes of this paragraph (a), "harass" means to create a hostile work environment based upon an individual's race, national origin, sex, sexual orientation, disability, age, or religion.  Notwithstanding the provisions of this paragraph (a), harassment is not an illegal act unless a complaint is filed with the appropriate authority at the complainant's workplace and such authority fails to initiate a reasonable investigation of a complaint and take prompt remedial action if appropriate.

Colo. Rev. Stat. § 24-34-402(1)(a).  In *Brooke*, the Colorado Supreme Court, interpreting a prior version of CADA, concluded that the legislature did not intend for

CADA to provide the exclusive remedy for sex discrimination claims. 906 P.2d at 68-70. However, CADA was amended in 1999 to expressly prohibit an employer from harassing an employee based upon an individual's sex. *See Gatuma v. Encore Elec., Inc.*, No. 12-cv-01611-MSK-MEH, 2012 WL 5354932, at *4 (D. Colo. Oct. 30, 2012).

The Colorado Supreme Court does not appear to have revisited this issue since its opinion in *Brooke*. Other courts considering CADA's preemptive effect, albeit in the context of wrongful discharge claims, have reached different results. Judge Wiley Daniel has found *Brooke* dispositive in ruling that a wrongful discharge claim premised on CADA was not preempted. *Kennedy v. Colorado RS, LLC*, 872 F. Supp. 2d 1146, 1150-51 (D. Colo. 2012) (collecting cases). Other courts, without relying on *Brooke*, have reached the opposite conclusion. *See Endahl v. Vinnell Corp.*, No. 04-cv-00426-MSK-PAC, 2006 WL 57496, at *10 (D. Colo. Jan 10, 2006) (concluding that plaintiff's claim for wrongful discharge in violation of public policy was barred because CADA provides employee with wrongful discharge remedy (citing *Gamble v. Levitz Furniture Co.*, 759 P.2d 761 (Colo. App. 1988)). In *Gatuma*, Judge Marcia Krieger questioned whether the holding in *Brooke* was dispositive on the question of CADA preempting common law wrongful discharge claims. *See* 2012 WL 5354932, at *3-*5. First, the court noted that *Brooke* concerned the interaction between CADA and a tortious interference with contract claim, which, unlike a wrongful discharge claim, can be brought against a defendant other than an employer. *Id.* at *3. Second, the court noted that *Brooke* was decided under an older version of the CADA, which did not explicitly prohibit harassment. *Id.* at *4. Third, the court was critical of *Brooke*'s conclusion that

CADA did not provide a comprehensive scheme for addressing workplace sex discrimination, concluding that "the only difference in the enforcement mechanism between an employee suing on a tort-based wrongful discharge claim and an employee asserting a statutory CADA claim, is the ability of the former to recover noneconomic damages whereas the latter cannot." *Id.* Ultimately, however, the court resolved plaintiff's wrongful discharge claim on other grounds without explicitly deciding whether CADA preempted such a claim. *Id.* at *5.

Defendant does not argue that CADA explicitly preempts plaintiff's negligent supervision claim. Rather, defendant argues, without much explanation, that, based upon the reasoning in *Gatuma*, plaintiff's negligent supervision claim is preempted by clear implication. Docket No. 20 at 7. Defendant's position appears to be that, because a common law negligent supervision claim based upon an employee's sexual harassment and a sexual harassment claim under CADA share similar elements of proof, CADA should preempt plaintiff's negligent supervision claim. *Id.* However, whether a common law claim and a statutory claim share elements of proof or are otherwise cumulative is not the test for preemption under Colorado law. Rather, if the legislature wishes to abrogate a common law right by statute, it must manifest its intent to do so explicitly or by clear implication. *Brooke*, 906 P.2d at 68. "A statute is merely cumulative if the object of the legislature was not to interfere with a plaintiff's existing rights, but to give him or her additional relief." *Vaughan v. McMinn*, 945 P.2d 404, 408 (Colo. 1997). The Court is not persuaded that the Colorado Supreme Court would, if presented with the opportunity, find that the General Assembly intended for CADA to

preempt a common law claim for negligent supervision or that result should follow by clear implication. *See Lamb v. Rizzo*, 391 F.3d 1133, 1138 (10th Cir. 2004) (holding that court interpreting state law must, in the absence of authoritative precedent, predict how the state's highest court would rule).[3]  Although CADA was amended in 1999 to explicitly prohibit harassment that does not culminate in a tangible employment action against a plaintiff, *compare Brooke*, 906 P.2d at 69, *with* § 24-34-402(1)(a), defendant does not provide legislative history indicating that the General Assembly's intent in enacting that amendment was to preempt common law claims based upon sexual harassment.  To the contrary, the Colorado Supreme Court in *Horodyskyj v. Karanian*, 32 P.3d 470, 479 (Colo. 2001), noted that "cumulative remedies, such as common-law claims, are available to victims of sexually discriminatory conduct in the workplace." *Id.* (citing *Brooke*, 906 P.2d at 68-70).

The Colorado Supreme Court has similarly not retreated from its conclusion that CADA does not "indicate a legislative intent to exclusively address the impact of discrimination on the individual claimant." *Brooke*, 906 P.2d at 69.  In *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1174 (Colo. 2000), the court reiterated that the Colorado Civil Rights Act ("CRA") "was not designed primarily to compensate individual claimants but rather to eliminate discriminatory practices as defined by the Act."  The forms of relief available under CADA "are equitable in nature and are aimed at eliminating workplace discrimination, not compensating individuals for their particular

---

[3] In so concluding, the Court need not and does not take a position on the question of whether CADA preempts common law wrongful discharge claims.  As discussed below, courts answering that question in the affirmative base their conclusion on reasons not directly applicable to negligent supervision claims.

injuries arising from violations of the CRA." *Id.* at 1175; *see also Coats v. Dish Network, L.L.C.*, 303 P.3d 147, 154 (Colo. App. 2013); *Watson v. Public Service Co. of Colo.*, 207 P.3d 860, 865 (Colo. App. 2008).

Defendant has failed to provide a sufficient basis for concluding that the General Assembly intended for CADA to be the exclusive remedy against an employer who negligently supervises an employee engaging in sexual harassment against a fellow employee. Thus, defendant's motion to dismiss on this issue will be denied.

### 2. Title VII

Defendant argues that plaintiff's negligent supervision claims are duplicative of her Title VII harassment claim and should therefore be dismissed. Docket No. 20 at 8-9. Defendant relies on much of the same authority as it does for its CADA preemption argument. *See id.* Thus, the Court construes defendant's argument as asserting that Title VII preempts or bars plaintiff's negligent supervision claim. However, defendant does not argue that it could not reasonably comply with both Title VII and state tort law concerning negligent supervision. *See Florida Lime & Avocado Growers, Inv. v. Paul*, 373 U.S. 132, 142-43 (1963). Rather, defendant suggests that, by asserting a negligent supervision and Title VII claim based upon the same conduct, plaintiff may be frustrating Title VII's "carefully-crafted damages scheme." Docket No. 26 at 3. The Court disagrees. First, defendant fails to cite any relevant authority in support of its claim that Title VII's "carefully-crafted damages scheme" was intended to preempt plaintiff's negligent supervision claim. In an unpublished decision, the Tenth Circuit held that Title VII did not preempt a plaintiff's tort claims arising out of workplace sexual

harassment. *See Pascouau v. Martin Marietta Corp.*, 1999 WL 495621, at *11 (10th Cir. July 14, 1999) (unpublished) (reversing district court's grant of summary judgment as to plaintiff's tort claims for extreme and outrageous conduct, invasion of privacy, and negligent supervision).[4] The court, relying on *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987), concluded that "Title VII does not manifest Congress' intent to occupy the field of employment discrimination law, especially in cases like this, where the state tort claims [plaintiff] made merely augment her federal claims and do not conflict with the provisions of Title VII or prevent the accomplishment of its purposes." *Id.*; *see also Thorsberg v. Gen. Motors Corp.*, 2005 WL 2461169, at *10 (W.D. Okla. Oct. 4, 2005) ("In light of cases which allow both discrimination claims and state tort claims to proceed to trial, it appears that the Tenth Circuit would allow plaintiff's state tort claims to go to trial along with her federal discrimination claims." (citing *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379 (10th Cir. 1991)). *But see Pretlow v. Garrison*, 420 F. App'x 798, 801 (10th Cir. 2011) (unpublished) (holding that Title VII was exclusive remedy for federal employee's discrimination and retaliation claim). Defendant does not attempt to distinguish or otherwise address *Pascouau*. Rather, defendant incorrectly quotes *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998), as stating that "[a]llowing a plaintiff to assert a duplicative state law claim would constitute an end-run around [Title VII's] limitations." *See* Docket No. 26 at 3. *Gebser* contains no such language and, moreover, does not support defendant's argument. The issue in *Gebser* was whether a plaintiff could recover damages through

---

[4]Although *Pascouau* is not precedential, the Court finds the Tenth Circuit's reasoning persuasive. *See* 10th Cir. R. 32.1.

a private right of action under Title IX. 524 U.S. at 277. In shaping an appropriate remedy, the Court declined to allow the unlimited recovery of damages in part because, when Title IX was enacted, damages were not yet available under Title VII. *Id.* at 285-86. *Gebser* does not therefore support the proposition for which defendant cites it.

Second, the premise of defendant's argument – that plaintiff's Title VII and negligent supervision claims are based upon the same conduct – is incorrect. Plaintiff's complaint leaves open the possibility that some of Mr. Alvarado's harassing conduct would not be considered gender-based, thereby falling outside of the conduct Title VII was intended to prohibit. *See, e.g*, Docket No. 6 at 4, ¶ 22 ("Mr. Alvarado threatened Ms. Alarid with bodily harm and informed her that he had a gun"); *see also Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005) (describing negligent supervision claim). Thus, plaintiff's negligent supervision and Title VII claims cannot be fairly read to base such claims on identical conduct.

Third, defendant also relies, by way of analogy, on cases where courts have ruled that tort claims for wrongful discharge in violation of public policy were barred because the statute providing the requisite public policy provides a wrongful discharge remedy. *See, e.g.*, *Gatuma*, 2012 WL 5354932, at *5; *Caspar v. Lucent Techs., Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003); *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo. App. 2003); *Gamble v. Levitz Furniture Co. of the Midwest Inc.*, 759 P.2d 761, 766 (Colo. App. 1988). Generally speaking, these cases turn on the following reasoning:

> The concept of a wrongful discharge evolved as an exception to the at-will employment doctrine and is designed to provide a remedy for unlawful

>  adverse employment actions where no cause of action for breach of contract would lie. The Colorado courts have expressly disallowed its application where a statute provides a wrongful discharge remedy.

*Caspar*, 280 F. Supp. 2d at 1249. Such reasoning has no apparent application to the tort of negligent supervision, which places upon employers a duty independent of Title VII or CADA to "recognize a potential employee's attribute[s] of character or prior conduct which would create an undue risk of harm to those with whom the employee came in contact in executing his employment responsibilities." *Keller*, 111 P.3d at 448.

For the foregoing reasons, the Court rejects defendant's argument that plaintiff cannot assert both a Title VII and a negligent supervision claim in this case.

### B. Negligent Supervision Claim Based Upon Ms. Hurtado's Conduct

#### *1. WCA*

Defendant argues that the WCA provides plaintiff's exclusive remedy against defendant for any injuries suffered as a result of Ms. Hurtado's assault. Docket No. 20 at 13-14. The preemptive effect of the WCA is a jurisdictional issue and is therefore resolved at the motion to dismiss stage under Fed. R. Civ. P. 12(b)(1). *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). The WCA "provides exclusive remedies for employees suffering work-related injuries and occupational diseases" and, as a result, bars tort actions "against an employer for injuries that are compensable under the Act." *Horodyskyj*, 32 P.3d at 474. The WCA provides an exclusive remedy for injuries occurring where, among other things, "the injury . . . is proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment and is not intentionally self-inflicted." Colo. Rev. Stat.

§ 8-41-301(1). However, "the phrases 'arising out of' and 'in the course of' are not synonymous and a claimant must meet both requirements." *Horodyskyj*, 32 P.3d at 475. The former phrase refers to the origin or cause of an injury, requiring "a causal connection between the injury and the work conditions for the injury to arise out of the employment." *Id.* "An injury 'arises out of' employment when it has its origin in an employee's work-related functions and is sufficiently related to those functions to be considered part of the employee's employment contract." *Id.* There appears to be no dispute as to the latter phrase.

The Colorado Supreme Court has divided willful assaults into three categories: employment risks, personal risks, and neutral risks. *City of Brighton v. Rodriguez*, 318 P.3d 496, 502-03 (Colo. 2014). Only injuries caused by personal risks are compensable outside of the WCA. *Id.* Inherently private assaults are those in which "the animosity or dispute that culminates in an assault is imported into the employment from claimant's or tortfeasor's domestic or private life, and is not exacerbated by the employment." *Horodyskyj*, 32 P.3d at 477 (quotations omitted). Such assaults have their origin in private affairs and therefore have "an insufficient nexus between the assault and the employment conditions or functions for the injury to arise out of employment." *Id.* Neutral risks are those risks that "are not associated with either the employment itself []or with the employee him- or herself." *Id.* at 503.

Defendant argues that plaintiff's injuries arose out of a neutral risk because, but for plaintiff's and Ms. Hurtado's employment, the assault would not have occurred in the manner it did. Docket No. 26 at 8-9. Defendant cites *Rodriguez* for the proposition

that, regardless of whether plaintiff's injury could also be considered to have resulted from a private risk, plaintiff's claim must be dismissed pursuant to the "but for" causation standard. *Id.* Defendant's argument is premised on a misinterpretation of *Rodriguez*. In *Rodriguez*, the Colorado Supreme Court reviewed an Administrative Law Judge's ("ALJ") decision that an unexplained fall was noncompensable under the WCA. 318 P.3d at 501. The court was bound by the ALJ's factual finding that plaintiff's injury did not arise out of a personal risk and therefore held that an unexplained fall necessarily constitutes a neutral risk. *Id.* at 503-04. The court reaffirmed that, when evaluating whether an unexplained injury was caused by a neutral risk, "but for" causation applies. *Id.* at 504. Plaintiff's injuries were not "unexplained" and are not therefore automatically considered a neutral risk. Moreover, *Rodriguez* does not stand for the proposition that WCA preemption at the motion to dismiss stage is determined solely by a "but for" causation standard. Defendant's arguments to the contrary are incorrect.

The question therefore becomes whether plaintiff has alleged sufficient facts upon which to conclude that her injury was caused by a private risk. Plaintiff's amended complaint alleges that she sought a restraining order against Mr. Alvarado and, at a July 25, 2013 hearing, called Ms. Hurtado to testify as a witness on her behalf. Docket No. 6 at 5, ¶¶ 24, 26. Ms. Hurtado lied to protect Mr. Alvarado and subsequently began retaliating against plaintiff at work until, on October 1, 2013, Ms. Hurtado assaulted plaintiff. *Id.* at 5, ¶¶ 26-29. There is no indication that Ms. Hurtado engaged in harassing or assaultive conduct towards plaintiff before the July 25, 2013

hearing or that she testified at the hearing as a representative of defendant. Defendant does not dispute these allegations or otherwise contradict them with evidence outside the complaint[5]; thus, the Court accepts them as true. *See Stuart*, 271 F.3d at 1225. Such facts plausibly state a claim that Ms. Hurtado's assault of plaintiff was inherently private, specifically, that her animosity was created by plaintiff's decision to pursue a restraining order against Mr. Alvarado – a matter which occurred outside the workplace – and was merely imported into the employment context. Plaintiff has therefore alleged sufficient facts to survive defendant's motion to dismiss on the issue of whether her negligent supervision claim based upon Ms. Hurtado's conduct is barred by the WCA.

### 2. Failure to State a Claim

Defendant alleges that plaintiff has failed to state a claim for negligent supervision with respect to Ms. Hurtado's conduct. Docket No. 20 at 10-11. To establish a negligence claim, a plaintiff must show "(1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff." *Keller*, 111 P.3d at 447. "To establish liability, the plaintiff must prove that the employer has a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm." *Id.* at 448. As discussed above, the tort is predicated on an employer's ability to recognize an employee's attributes, character, or prior conduct that create an undue risk of harm to those persons the employee

---

[5]Although defendant provides evidence that it had a worker's compensation policy in place, *see* Docket No. 26-1; Docket No. 26-2, such evidence does not challenge the factual allegations in the amended complaint.

encounters in performing his or her job. *Id.* Moreover, "there must be a connection between the employer's knowledge of the employee's dangerous propensities and the harm caused." *Id.* at 450.

Plaintiff alleges that, prior to October 1, 2013, Ms. Hurtado targeted plaintiff at work by making frequent rude comments and physically throwing plaintiff's work on the floor. Docket No. 6 at 5, ¶ 27. Ms. Hurtado also engaged in aggressive behavior toward other co-workers during that time. *Id.* at 6, ¶ 36. Plaintiff and co-workers informed defendant of such behavior. *Id.* at 5-6, ¶¶ 28, 36. Prior to Ms. Hurtado's assault on plaintiff, Ms. Hurtado got angry and threatened to fight Ms. Deleon. *Id.* at 5, ¶ 30. Although plaintiff does not specifically allege that defendant was aware of Ms. Hurtado's threat to fight Ms. Deleon, when viewed in the appropriate light, the seriousness of that incident combined with plaintiff's and co-workers' reports of Ms. Hurtado's aggressive behavior created a foreseeable risk, of which defendant knew or should have known, that Ms. Hurtado would physically harm one of her co-workers. Ms. Hurtado assaulted plaintiff, a co-worker. Thus, plaintiff has stated a claim for negligent supervision. *Compare Keller*, 111 P.3d at 450 ("This proof supports a finding that Keller knew that Uzan's continued employment created a risk that young women working at the dry cleaners and potential customers would be subject to sexual contact and lewd behavior during business hours and Keller therefore had a duty to take reasonable steps to prevent *that* harm from occurring." (emphasis in original)), *with White v. City & Cnty. of Denver*, No. 13-cv-01761-CMA-MJW, 2015 WL 4748303, at *4 (D. Colo. Aug. 12, 2015) ("there is no connection between Code-3's alleged knowledge

of Burke's misrepresentation of his employment status or its training methods and the harm Burke allegedly caused Plaintiff").

### C.  Negligent Retention Claim

Defendant argues that plaintiff's negligent supervision and negligent retention claims are duplicative and that the latter claim should therefore be dismissed. Docket No. 20 at 14.  As an initial matter, the cases defendant's motion cites do not stand for the proposition that negligent retention claims are generally duplicative of negligent supervision claims and must therefore be dismissed.  *See English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) (agreeing with plaintiff that outrageous conduct and intentional infliction of emotional distress claims are "two ways of stating the same claim"); *Van Osdol v. Vogt*, 892 P.2d 402, 408-09 (Colo. App. 1994) (discussing negligent supervision and retention claims together and dismissing both on same grounds).  The additional cases cited in defendant's reply brief similarly do not mandate dismissal of plaintiff's negligent retention claim.  *See, e.g.*, *Valles v. Gen-X Echo B, Inc.*, No. 13-cv-00201-RM-KLM, 2013 WL 5861653, at *6 n.2 (D. Colo. Oct. 8, 2013) (noting that *Van Osdol* "appears to treat 'negligent supervision' and 'negligent retention' as the same claim").  On the other hand, plaintiff does not cite any authority explicitly stating that the two claims are distinct.  *See* Docket No. 22 at 14.  It appears that Colorado plaintiffs assert negligent supervision and negligent retention theories both as separate claims and as a single claim without much comment from courts.  *Compare Van Osdol*, 892 P.2d at 408-09 (pled as separate claims), *with Casey v. Christie Lodge Owners Ass'n, Inc.*, 923 P.2d 365, 367-68 (Colo. App. 1996) (considering whether plaintiff should be

permitted to "add a claim for negligent supervision *or* negligent retention" (emphasis added)).

The Court need not decide whether, as a general matter, negligent supervision and negligent retention claims are duplicative because the claims alleged in this case are not. Although the two claims may arise from the same general duty of care, namely, "a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm," *Keller*, 111 P.3d at 448, plaintiff's negligent supervision claim alleges that defendant breached its duty by failing to properly supervise Mr. Alvarado and Ms. Hurtado, Docket No. 6 at 8, ¶¶ 54, 58, whereas plaintiff's negligent retention claim alleges that defendant breached its duty by continuing to retain Mr. Alvarado and Ms. Hurtado in light of the risk they posed to third parties. *Id.* at 9, ¶¶ 62, 65. Thus, regardless of how the claims are styled in the amended complaint, plaintiff has identified two distinct theories of liability and defendant has asserted no legitimate reason why plaintiff should not be able to argue both theories at trial. This aspect of defendant's motion to dismiss is therefore denied.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Partial Motion to Dismiss [Docket No. 20] is **DENIED**.

DATED September 16, 2015.

                                              BY THE COURT:

                                              s/Philip A. Brimmer
                                              PHILIP A. BRIMMER
                                              United States District Judge